[Cite as *Brent v. Siler*, 2023-Ohio-1068.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CHARLA BRENT | : | |
| | : | |
| Appellee | : | C.A. No. 29624 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 04031 |
| | : | |
| DARRELL SILER | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 31, 2023

. . . . . . . . . . .

CHARLA BRENT, Appellee, Pro Se

DARRELL SILER, Appellant, Pro Se

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1}   Darrell Siler appeals from the trial court's order granting a civil stalking protection order in favor of Charla Brent following a full hearing. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} On September 7, 2022, Brent filed a Petition for civil stalking protection order against Siler. Her petition alleged that Siler had made "advances" on her when she first

met him; that she had refused his advances; that Siler had walked by her bedroom window and made threatening and obscene remarks; and that Siler had shoved her into a wall, bruising her head. On that same day, Siler also filed a petition for civil stalking protection order against Brent.

{¶ 3} The two cases were consolidated on September 9, 2022. The magistrate issued an ex parte protection order on the petition filed by Brent, and the matter was set for full hearing on September 27, 2022.

{¶ 4} At the hearing, both parties had an opportunity to present evidence, and the following exchange occurred:

[THE COURT]: Okay, we're on the record, case number 2022 CV 4030, matter of Darrell Siler v. Charla Brent, and case number 2022 CV 4031, matter of Charla Brent v. Darrell Siler. * * *

[THE COURT]: Okay. And you each have filed petitions against one another. We will first start with the petition that was filed first, which was Mr. Siler's.

Mr. Siler, you filed your petition on September 6, 2022. What happened close to that time that made you come down and request a protection order?

[MR. SILER]: What was it – September 6th? I have a hard time with memory. There's a – can I go through the process?

[THE COURT]: Well, I can ask you more specific questions. What happened on September 5th?

[MR. SILER]: Let's see. I was  -- she's called the police on – ah, okay.

That's when – September 5th? I was supposed to physically assault her in a hallway. I followed her, pushed her up against the wall. This was supposed to happen like 2320 hours – okay?

[THE COURT]: So she called the police saying that you assaulted her.

[MR. SILER]: Yeah.

[THE COURT]: Okay, and you deny –

[MR. SILER]: Nine hours after this assault –

[THE COURT]: And you deny that you assaulted her?

[MR. SILER]: Nine hours later? Yes.

* * *

[MR. SILER]: Okay. Well, yeah. But I have the police report where she first stated it was somebody else. And asked – the officer was puzzled as to why she made that comment and then changed it to – it was me.

* * *

[THE COURT]: Has the Respondent threatened you?

[MR. SILER]: Threatened me? Yeah, she threatened me with jail.

[THE COURT]: That's not a threat, sir.

[MR. SILER]: Okay. You –

[THE COURT]: Threatening somebody –

[MR. SILER]: (Indiscernible) no physical threat.

[THE COURT]: -- with any type of legal action

[MR. SILER]: (Indiscernible).

[THE COURT]: -- or calling the police is not a threat.

[MR. SILER]: Okay, well, then there's no physical involved.

[THE COURT]: Okay. So why is that you're requesting a protection order?

[MR. SILER]: She's a drama queen, and I know she's going to try to get me put in jail.

[THE COURT]: Well, how is a protection order going to prevent that because lots of people with protection orders still go to jail.

[MR. SILER]: Yeah, I know, because she had a protection order against somebody, and she followed them all around.

[THE COURT]: Okay –

[MR. SILER]: I don't know.

[THE COURT]: -- so that's – you just want her to stop following you around?

[MR. SILER]: Just to quit making false accusations.

[THE COURT]: Well, I can't do anything about that.

* * *

[THE COURT]: Ms. Brent, you filed against Mr. Siler. What happened on September 5th, 2022?

[MS. BRENT]: I was – first of all, I'm shaking. I'm nervous. I've got muscular dystrophy, and all the stress is really making me – so on September 5th – if I can get out and walk, like I do on a daily basis for my health – I walk through the stairs and the hallways and stuff – and that's what I was doing. So I'm taking my walk, and I'm thinking it's about between 7 and 8:00. I'm

going up and down the stairs. I'm coming around the stairs, coming out the door, and I hear somebody behind me. And I kind of look, and I see Mr. Siler, and I see him coming towards me, and I turn around. I'm trying to get away from him because he and I have had some kind of bad emotions between us. Like I said, I'm nervous. So I turn, I see him, and I start walking faster. Next thing I know, I'm looking at him and he slams me against the wall. And I don't even remember making it back to my apartment.

And I think I passed out on the bed because I woke up like around 11:30 at night. So – and then I saw that I had this contusion on my head – my right side of my head. So the officers – you know, I did call the police, and the officers were asking me questions, and he said, ma'am you're slurring. And I said I just got knocked out. And plus, I have muscular dystrophy, and especially when I get stressed, it's hard for me to get words out, and I do slur. I can't help it. So that was what happened on that day.

[THE COURT]: Okay. And then what happened on August 28th, 2022?

[MS. BRENT]: August 28th?

[THE COURT]: Um-hum. That's what's in your petition.

[MS. BRENT]: I haven't read through – let me look through it really quick. Okay, I want to say – I'm trying to think what day that was. I'm so sorry.

[THE COURT]: It says that Darrell walked by you and said threatening and obscene remarks.

* * *

[THE COURT]: Well, what did he say?

[MS. BRENT]: All he ever does – he does it under his breath, or he yells it to me personally where nobody can hear it. And he'll just walk by my bedroom window too close. I mean, there's no reason for him to be behind there where I live at. He lives down the front; I live in the back. And he'll walk by very quickly, and he'll go bitch, watch your back. And there's nothing I can do about it. It's frustrating. There's nothing I can do about it. I'm just tired of it.

* * *

[THE COURT]: Okay, Mr. Siler, what evidence do you want me to consider?

[MR. SILER]: First, she has –

[THE COURT]: No, no, no. What evidence, meaning what –

[MR. SILER]: You want documents?

[THE COURT]: Yes, what documents? Do you have –

[MR. SILER]: Oh, okay.

[THE COURT]: What do you want me to consider?

[MR. SILER]: I have a pattern of her making false alarms – telephone harassment, criminal trespassing, three domestic violence [sic].

[THE COURT]: Were they against you?

[MR. SILER]: Against her – it's a pattern –

[THE COURT]: Okay. I don't care. Were they against you? No. Were you the victim of her domestic violence? No. I don't care.

[MR. SILER]: Well, what the hell did you want?

[THE COURT]: I want evidence of threats.

[MR. SILER]: Evidence of threats?

[THE COURT]: Yes. If you don't have it, then say you don't have evidence.

[MR. SILER]: No evidence of threats. But I'm – all I have is a –

[THE COURT]: Okay, Ms. Brent, what evidence do you have you want me to consider?

* * *

[THE COURT]: Okay, and is that picture the picture of the injury from September 5th?

[MS. BRENT]: Yes, this one here.

* * *

[MR. SILER]: Can I give a copy of a police report saying how she contradicted herself about – and the viewing of – the officer viewed videos of that. And I have pictures of all around the building that would show if I approached her in the hallway.

[THE COURT]: What is that – just give me the police report. That's all I need.

* * *

{¶ 5} On October 6, 2022, after the full hearing, Siler's petition was denied, and the trial court adopted the magistrate's order denying Siler's petition. Also on October 6, 2022, the magistrate granted Brent's petition, to be effective until October 1, 2024. In the

final civil stalking protection order, the magistrate made the following factual findings:

> The Magistrate finds that Petitioner credibly testified that on September 5, 2022 she was walking in the stairwell of her apartment complex when she sees Respondent. Respondent slams Petitioner's head against the wall, causing bruising. Petitioner provided a photo of her injury, marked as Exhibit 1. Petitioner testified that prior to this, Respondent has threatened her multiple times and told her to "watch her back."

{¶ 6} The magistrate's October 6 order was signed by the trial judge and filed by the clerk of courts, and a Rule 58(B) Civil Notice of Final Appealable Order was sent to all parties. Siler did not file objections to the magistrate's decision and trial court's order prior to filing his appeal. On October 19, 2022, Siler filed his notice of appeal on the civil stalking protection order that was granted in favor of Brent.

{¶ 7} In his brief, Siler raises the following assignments of error:

> The Magistrate refused to accept police reports of the Appelle [sic] at her previous address which she was charged with criminal trespassing, telephone harassment, assault, following man around complex who she had a CPO against, numerous reports of making false alarms, and a statement she lied to police about following the man she had CPO against. Ohio R. Evid. 405(A), (B), Ohio R. Evid 608(A)

> The Magistrate refused to accept photographs of locations of video cameras at all places in the building which would show anyone approaching location of the alleged assault. Transcript p. 9

It appears Appellant's police report stating 9 hours passed between time of alleged assault and time medics and police were called as well as narrative stating Appellee at first said someone else assaulted her wasn't considered.

The Court's decision was based on what Appelle [sic] said and a photo of her head injury in spite of evidence not accepted from Appellant and report that was accepted where Appelle [sic] obviously made this whole thing up. Appelle [sic] knows some people I grew up with and do not like their character.

{¶ 8} Siler argued that the magistrate's decision must be reversed and the case dismissed because the magistrate "refused evidence of photos showing areas accessible to alleged assault," rejected prior police reports showing Brent's character, overlooked the time difference between the alleged assault and Brent's notification of the police and her statement to police, disregarded Brent's admission of slurred speech, and failed to consider that Brent first told police that it was someone other than Siler who assaulted her.

{¶ 9} Civ.R. 65.1 governs civil protection orders. A court may refer the proceedings under these special statutory proceedings to a magistrate. Civ.R. 65.1(F)(1). If the matter is referred for a full hearing and determination, the magistrate shall conduct the full hearing and, upon conclusion of the hearing, deny or grant a protection order. Civ.R. 65(F)(3)(a). "A magistrate's denial or granting of a protection order after full hearing under this division does not constitute a magistrate's order or a magistrate's decision under

Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules." Civ.R. 65(F)(3)(b). "A magistrate's denial or granting of a protection order after a full hearing shall comply with the statutory requirements relating to such orders and is not effective unless adopted by the court." Civ.R. 65.1(F)(3)(c)(i). "When a magistrate has denied or granted a protection order after a full hearing, the court may adopt the magistrate's denial or granting of the protection order upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii). "Upon review of a magistrate's denial or granting of a protection order after a full hearing, the court may modify or reject the magistrate's order." Civ.R. 65.1(F)(3)(c)(iii)." A court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing under this division does not constitute a judgment or interim order under Civ.R. 53(D)(4)(e) and is not subject to the requirements of that rule." Civ.R. 65.1(F)(3)(c)(iv). "A court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing shall be effective when signed by the court and filed with the clerk." Civ.R. 65.1(F)(3)(c)(v).

{¶ 10} "A party may file written objections to a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days of the court's filing of the order. If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed." Civ.R. 65.1(F)(3)(d)(i). "The timely filing of objections under this division shall not stay the execution of the order." Civ.R. 65.1(F)(3)(d)(ii). "A party filing objections under this division has the burden of showing

that an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order." Civ.R. 65.1(F)(3)(d)(iii). "Objections based upon evidence of record shall be supported by a transcript of all the evidence submitted to the magistrate or an affidavit of that evidence if a transcript is not available. * * * The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections." Civ.R. 65.1(F)(3)(d)(iv). "Notwithstanding the provisions of any other rule, an order entered by the court under division (F)(3)(c) or division (F)(3)(e) of this rule is a final, appealable order. However*, a party must timely file objections to such an order under division (F)(3)(d) of this rule prior to filing an appeal*, and the timely filing of such objections shall stay the running of the time for appeal until the filing of the court's ruling on the objections." (Emphasis added) Civ.R. 65.1(G).

{¶ 11} Here, the record reflects that Siler did not timely file objections to the trial court's adoption of the magistrate's decision granting the civil stalking protection order in favor of Brent. Under Civ.R. 65.1(G), in the absence of timely objections, Siler may not challenge the trial court's decision on appeal. However, even if Siler had timely filed objections, we find that there was no error of law or other defect evident on the face of the order, that there was sufficient credible evidence in the record to support the granting

of the protection order, and that the magistrate did not abuse her discretion in including the specific terms in the protection order. The magistrate found that Brent credibly testified that, on September 5, 2022, she was walking in the stairwell of her apartment and saw Siler immediately before Siler slammed her head against the wall, bruising her head; that Brent provided a photo of her injury, marked as Exhibit 1; and that Brent testified that, prior to this event in the stairwell, Siler had threatened Brent multiple times and told her to "watch her back." The magistrate had discretion to consider the evidence presented by the parties and accepted the police report submitted by Siler as evidence before issuing the decision. Upon our review of the transcript, we find that the magistrate's decision and trial court's order were supported by competent, credible evidence, and Siler's assignments of error are overruled.

{¶ 12} The trial court's judgment is affirmed.

. . . . . . . . . . . . .


EPLEY, J. and LEWIS, J., concur.